UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARK A. THOMPSON,<br>　　　*Plaintiff*,<br>　　　*v.*<br>BOARD OF TRUSTEES<br>COMMUNITY-TECHNICAL COLLEGES,<br>　　　*Defendant.* | Civil No. 3:12cv417 (JBA)<br><br>May 19, 2014 |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Mark A. Thompson brings this suit against his employer, Defendant Board of Trustees Community-Technical Colleges, alleging that he has been subjected to a hostile work environment on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (*See* Compl. [Doc. # 1].) Defendant now moves [Doc. # 29] for summary judgment, arguing that Plaintiff has failed to offer evidence showing any issue of material fact on his Title VII claim such that Defendant is entitled to judgment as a matter of law. For the following reasons, Defendant's motion for summary judgment is granted.

**I.　　Summary of Plaintiff's Evidentiary Record**

Plaintiff's only evidence offered in opposition to Defendant's motion for summary judgment is his deposition testimony and his responses to Defendant's written discovery requests.[1] Plaintiff, who is African American, has been employed as a Fiscal Administrative Assistant in the Payroll Department at Middlesex Community College from July 23, 2004 through the present date. (Thompson Dep. Tr., Ex. 3 to Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 30-1] at 41; Phillips Aff., Ex. B to Def.'s Loc. R. 56(a)1 Stmt. [Doc.

---

[1] The Complaint is not verified and thus is not considered as a component of the evidentiary record offered by Plaintiff.

# 29-2] ¶ 5.)  He earned his bachelor's degree from Wesleyan University and his master's degree from Brooklyn College.  (Thompson Dep. Tr. at 9-10.)  When Plaintiff was hired in 2004, he did not attend an orientation and was not informed what his job duties and compensation would be.  (*Id.* at 42.)[2]  Plaintiff also claims that he has been denied continuing training and promotions for which he was qualified.  (*Id.* at 42–43.)

In 2007, Plaintiff filed a grievance claiming that he was being required to perform duties at a higher level than those encompassed by his position as a Fiscal Administrative Assistant.  (*Id.* at 51–53.)  He maintains that through this grievance he indirectly applied for a promotion to Payroll Officer.  (*Id.* at 79.)  The hearing officer determined that Plaintiff's job duties were appropriate for his position, and Plaintiff's subsequent appeal of the decision denying the grievance was denied in July 2008.  (Phillips Aff. ¶ 6; *see also* Grievance Documents, Ex. 4 to Thompson Dep. Tr.)  Despite this ruling, Plaintiff continues to claim that he has been required to illegally perform job duties above his classification without commensurate compensation.  (Thompson Dep. Tr. at 48–50.)  Plaintiff asserts that "similarly situated" Caucasian employees, such as Jennifer Hobby,[3] Josephine Agnello, and Geri Lamanque have not been required to perform this extra work without compensation.  (*Id.* at 54–58.)

---

[2] At oral argument, Plaintiff's counsel acknowledged that the status of Plaintiff's working conditions nearly ten years ago could not form the basis for a timely hostile work environment claim, but stated that Plaintiff included these allegations to provide additional background in support of his timely claim.  *See Coger v. Conn. Dep't of Public Safety*, 143 F. App'x 372, 374 (2d Cir. 2005) ("Plaintiff argues, and we agree, that *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), requires the consideration of facts, related to claims now untimely, as background to timely claims.").

[3] Ms. Hobby worked in the Human Resources Department and was supervised by Josephine Agnello.  (*Id.* at 55–57.)

During the course of Plaintiff's employment at Middlesex Community College, the Payroll Office Manager, Anthony Majewski, who is Caucasian, would "holler and scream" at Plaintiff and would frequently pass gas and curse when he was alone in Plaintiff's presence. (*Id.* at 69–72.)[4] However, Plaintiff acknowledges that his co-worker, Geri Lamanque, who is a Caucasian woman, complained to him about Mr. Majewski's tone of voice and "foul behavior" towards her[5] and also complained to him that Mr. Majewski had passed gas in front of her on one occasion, forcing her to open a window to dissipate the odor. (*Id.* at 68–72, 92–94.) Mr. Majewski also frequently made comments to Plaintiff that other African American men in the office, including Irod Lee and Dean Samuels, did not know what they were doing or did not know how to do their jobs. (*Id.* at 69–71.) However, Mr. Majewski never made any race-based comments about these men, and never made any racial comments to Plaintiff. (*Id.* 69–73.) Nonetheless, Plaintiff believes that Mr. Majewski conducts himself differently in the presence of Caucasian employees than he does in the presence of minority employees, and perceives that Mr. Majewski promotes a certain level of incompetence with his African American

---

[4] Mr. Majewski was Plaintiff's supervisor until Plaintiff complained of sexual harassment by Mr. Majewski, at which time, Kimberly Hogan, who is the Director of the Business Office, took over supervision of Plaintiff. (Thompson Dep. Tr. at 57, 59.)

[5] Neither party has offered an affidavit from Ms. Lamanque, and thus the only record of her complaints regarding Mr. Majewski's behavior towards her is contained in Plaintiff's deposition testimony. While the Court cannot rely on these hearsay statements for their truth, they are admissible for the purpose of undermining Plaintiff's professed subjective belief regarding the racial basis for Mr. Majewski's purported workplace hostility.

subordinates that he does not promote with his Caucasian subordinates.  (*Id.* 67, 91–92, 111.)[6]

Plaintiff supports his hostile work environment claim with his testimony that other minority employees who work at Middlesex Community College have complained to him that they have also suffered a racially hostile work environment, which Plaintiff claims contributed to his experience of the hostility of the work environment.[7]   For example, Plaintiff claims that Linda Asnarra, the secretary for Dean Samuels—an African American dean at the school—complained to Plaintiff regarding racial discrimination against Mr. Samuels.  (*Id.* at 30–31.)  Mensimah Shabazz complained to Plaintiff that she was pushed out of her position to make way for a Caucasian employee.  (*Id.* at 30, 32–34.)  Michael Amouzou, the African American Director of Financial Aid complained that he was discriminated against by Adrian Maslin and Daryl Reome, both of whom Plaintiff claims also targeted him.  (*Id.* at 32.)   Plaintiff does not identify the nature of this discrimination.   Several unidentified Caucasian employees also told Plaintiff that they were troubled by the racial discrimination tolerated in the office but were afraid to complain for fear of losing their jobs.  (*Id.* at 92.)

On one occasion, Plaintiff overheard through the wall of his office the Human Resources Manager, Josephine Agnello, a Caucasian woman, speaking with an unidentified third-party at which time she made the comment:  "At least I don't have to

---

[6] At oral argument, Plaintiff's counsel agreed that Plaintiff's claim that Mr. Majewski frequently brushed up against him was relevant to a sex discrimination claim that has not been pursued.

[7] Plaintiff has not submitted an affidavit from any of these employees and he does not claim to have personal knowledge of any of the discrimination they complained to him about.  Therefore, all of these complaints represent inadmissible hearsay and may not be relied on by the Court for the purpose of establishing whether these individuals suffered race-based discrimination.

listen to a n*gger." (*Id.* at 85–89.)  Plaintiff does not recall whether he filed a complaint after this incident, and he never heard Ms. Agnello use a racial slur again.  (*Id.*)

On several occasions, Plaintiff was sent to work in an archives area of the office, and the stale air and dirt in the area caused him discomfort and made him sick.  (*Id.* at 97–101.)  However, several Caucasian employees were also sent to work in the area, including Kimberly Hogan and Ms. Lamanque.  (*Id.* at 97–102.)  Plaintiff filed a complaint regarding the illness he suffered when he was forced to go to the archives, and as a result of his complaint, he is no longer required to work in that area.  (*Id.* at 97–101.) Plaintiff also claims that his workspace is infested with mold, and that he is forced to continue to work there while Caucasian employees have been moved to other offices.  (*Id.* 113–14.)

Plaintiff believes that employees at Middlesex Community College would frequently supply him with untimely or incorrect data that caused him to make errors in his own work and that these employees were not judged as harshly as he was for the mistakes even though they were the source of the errors.  (*Id.* at 102–09.)  Plaintiff also claims that in addition to giving him incorrect information, Mr. Majewski impeded his work flow so that Mr. Majewski would receive overtime while Plaintiff was denied overtime compensation.  (*Id.* at 65–66.)  Similarly, Kimberly Hogan who jointly supervises Adam Kowlaski,[8] a Caucasian man, and Plaintiff, gives Mr. Kowlaski overtime while denying Plaintiff similar overtime opportunities and takes every opportunity to raise the pay of Caucasian employees at the expense of minority employees.  (*Id.* at 75–

---

[8] Mr. Kowlaski's job title has not been identified, but he appears to have been hired for a more senior position than Plaintiff to which Plaintiff believes he should have been promoted.  (*Id.* at 77–78.) Mr. Kowlaski's job responsibilities require him to use a different computer database than Plaintiff.  (*Id.* at 68.)

77.)  In keeping with this pattern she failed to promote him to a position in which he had expressed an interest to her via email.  (*Id.* at 77–90.)[9]

Plaintiff's evaluations during his tenure at Middlesex Community College have always been satisfactory, and have earned him all of the wage increases due under the terms of the applicable collective bargaining agreement, but were not good enough to qualify him for the promotions he believes he deserves.  (*Id.* at 62, 64; Phillips Aff. ¶ 7.) Plaintiff feels that similarly situated Caucasian employees have received equal or better evaluations even though their work was inferior to his.  (Thompson Dep. Tr. at 60–63.)[10] Plaintiff has never been disciplined while employed at Middlesex Community College (Phillips Aff. ¶ 8), but, as a result of his treatment at work, Plaintiff claims that his personal relationships have suffered, and he has experienced anxiety and depression (Thompson Dep. Tr. at 115, 117).

---

[9] At oral argument, Plaintiff's counsel clarified that Plaintiff is not asserting a claim for discriminatory failure to promote, and acknowledged that Plaintiff has never formally applied for any promotion during his time at Middlesex Community College.

[10] Plaintiff only mentions the evaluations of other employees that "came across [his] desk" but does not describe these evaluations in any detail nor explain how he came to see other employees' evaluations.  (*Id.* at 60.)

II.    **Discussion**[11]

Defendant moves for summary judgment, arguing that Plaintiff has failed to offer any evidence from which reasonable jurors could conclude that he was subjected to a hostile work environment or that the conduct he complains of was motivated by his race. Plaintiff maintains that he has described a longstanding pattern of discriminatory conduct, including at least one example of overt racial animus, and his claim should survive summary judgment.

Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  To survive a motion for summary judgment, Plaintiff must provide evidence from which reasonable jurors could conclude: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile work

---

[11] Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted).  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record.  Fed. R. Civ. P. 56(c).

environment to the employer." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (internal citations omitted).  The test for a hostile work environment claim is both subjective and objective, based on consideration of the totality of the circumstances. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).  Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*  For conduct to be frequent, "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Id.* (internal quotations and citations omitted).

"Although actionable harassment is not confined to explicitly racial conduct, 'the plaintiff is required to establish that the harassment complained of was based on [his race].'" *James v. Conn. Dep't of Corr.*, No. 3:05cv1787 (CFD), 2009 WL 279032, at *6 (D. Conn. Jan. 14, 2009) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)).   However, even without direct evidence of racially overt acts, a hostile work environment claim could withstand summary judgment based on circumstantial evidence, particularly where egregious.  *See Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) ("[Courts] recognize that most discrimination . . . is not carried out so openly as to provide direct proof of it."); *see also Lewis v. State of Conn. Dep't of Corr.*, 355 F. Supp. 2d 607, 622–23 (D. Conn. 2005) (Kravitz, J.) ("[Although] neither incident involved a comparably overt, egregious, and clear act of racial discrimination (such as a barrage of racial slurs) . . . . [t]he Court believes a reasonable trier of fact considering the totality of the circumstances could conclude that these [six] incidents . . . constitute a hostile environment.").

Defendant argues that Plaintiff has failed to establish either that the complained-of harassment was so severe as to alter the conditions of his employment or that it was motivated by racial animus.  In *Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000), the plaintiff's subordinate exhibited a pattern of making offensive comments to her, spreading rumors about her to other employees, and refusing to follow her orders.  Such conduct was found to create a hostile work environment, especially in light of the plaintiff's position as a firefighter, in which her harasser's insubordination could potentially put lives at risk, and because the alleged harassing behavior was all perpetrated by the same individual who had previously made offensive gender-based comments to the plaintiff.  *Id.* at 154–55.  Defendant argues that the circumstances in this case fall far short of those present in *Howley*, in which the Second Circuit found conduct sufficient to constitute a hostile work environment.

Plaintiff counters that Defendant has ignored many of his claims of harassing behavior and has failed to view the alleged behavior based on the totality of the circumstances in the context of the offensive race-based comment made by Ms. Agnello. Plaintiff makes the following allegations in support of his hostile work environment claim:  (1) Plaintiff's minority co-workers have complained to him of experiencing a hostile work environment based on their race; (2) Plaintiff was not given an orientation when he first started working at Middlesex Community College and never had his job duties properly explained to him; (3) Plaintiff's job duties were improperly increased without a commensurate increase in salary, while Caucasian employees were allowed to refuse increased job duties; (4) Plaintiff's evaluations are not as good as similarly situated Caucasian employee's whose work is inferior to Plaintiff's; (5) Plaintiff's supervisors impede his workflow to deprive him of overtime; (6) Plaintiff's co-workers provide him

with incorrect information, which causes him to make errors that reflect poorly on his performance; (7) Plaintiff is required to work in a moldy office while Caucasian employees were moved to other offices, and was also forced to work in the musty archives area; (8) Plaintiff's former supervisor treated Caucasian employees better than he treated minority employees:  the supervisor yelled at Plaintiff, impeded his work flow, passed gas in his presence and disparaged other minority employees; and (9) Plaintiff overheard the Human Resources Manager use a racial slur.

While the Court must consider the evidence in light of the totality of the circumstances when evaluating Plaintiff's hostile work environment claim, most of the allegations listed above represent no more than Plaintiff's subjective beliefs and are unsupported by admissible evidence necessary to establish a genuine question of material fact and survive a motion for summary judgment.  Therefore, the Court must first identify which of the cited examples of hostility in Plaintiff's workplace have any basis in the record before it can consider whether the totality of those circumstances is sufficient to support a race-based hostile work environment claim.

First, the Court must exclude from its consideration the allegations of racial animus that are based solely on hearsay.  In his deposition, Plaintiff testified that several of his co-workers complained to him of similar race-based harassment, and that unidentified, Caucasian co-workers also remarked on the racially-hostile environment in the workplace.  Although such complaints would have been probative of Plaintiff's claim had they been made by the employees themselves in depositions or affidavits offered by Plaintiff's attorney, Plaintiff's testimony as to what other people told him is hearsay, and is inadmissible to prove the required objective prong of Plaintiff's hostile work

environment claim.[12]   Thus, the Court will not consider the complaints from other workers when evaluating Plaintiff's claim.

Similarly, Plaintiff cannot rely on his conclusory and subjective beliefs, unsupported by any objective evidence in the record, to sustain his hostile work environment claim.   Thus, Plaintiff's allegations regarding his evaluations and access to overtime will not be included in the Court's consideration of his hostile work environment claim because Plaintiff has failed to provide any evaluations or overtime records in the summary judgment record.   Plaintiff has not identified any individuals who received comparable evaluations to him for inferior work and has not offered any evidence regarding the content of their evaluations beyond his subjective opinions as to the value of their work compared to his based on his generalized sense of the evaluations that "came across [his] desk."   Based on this record, no trier of fact could determine that the evaluations of his Caucasian co-workers were in fact superior to his.   *See Reed v. Conn. Dep't of Transp.*, 161 F. Supp. 2d 73, 84 (D. Conn. 2001) ("An employee's opinion about his own qualifications does not suffice to give rise to an issue of fact about whether he was discriminated against." (internal citations and quotation marks omitted)). Plaintiff has also failed to provide any evidentiary comparison of the amount and circumstances of the overtime received by his co-workers compared with his situation, only his subjective perception without any description of the job duties or seniority status of his alleged comparators.   Thus, a trier of fact has no basis for evaluating whether these

---

[12]   Plaintiff argues that these statements are admissible for the purpose of showing their effect on Plaintiff's state of mind.   While such evidence may establish Plaintiff's subjective belief that he had been subjected to a race-based hostile work environment, these statements remain inadmissible for the purpose of the Court's evaluation of the indispensible objective prong of Plaintiff's claim.

co-workers did in fact receive more overtime than Plaintiff did for the same type of work under similar circumstances.

Similarly, with respect to Plaintiff's allegations that identified "similarly situated" Caucasian comparators received better treatment than he did, with the exception of Ms. Lamanque, Plaintiff has not provided evidence based on which a trier of fact could conclude that these employees were in fact similarly situated to Plaintiff.   For example, the record does not reflect the job titles or responsibilities of Jennifer Hobby or Adam Kowlaski, and without such information, it cannot be determined whether they are similarly situated to Plaintiff.  *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2000) ("[To show that an individual is similarly situated in all material respects], a plaintiff must show that [his] co-employees were subject to the same performance evaluation and discipline standards.").  Plaintiff states that Ms. Hobby worked in a different department and reported to a different supervisor, and that Mr. Kowlaski worked in a different computer database than Plaintiff and held a position superior to Plaintiff's to which Plaintiff believed he should have been promoted.  (Thompson Dep. Tr. at 55–57, 67, 77–78.)  Plaintiff describes Josephine Agnello as a supervisor and the Human Resources Manager, which is hardly similarly situated to him.   At oral argument, Defendant's counsel acknowledged that Geri Lamanque could be proved to be similarly situated to Plaintiff, but that the only evidence in the record is that she was treated similarly to Plaintiff, and also suffered poor treatment at Mr. Majewski's hands.  (*Id.* at 68–72, 92–94.)

The remaining examples of workplace hostility—Mr. Majewski's treatment of Plaintiff, the increase in Plaintiff's job duties, the allegation that Plaintiff's co-workers gave him incorrect information, and the fact that Plaintiff was forced to work in a moldy office—are all based on Plaintiff's personal knowledge and thus the Court will consider

the totality of these circumstances in evaluating Plaintiff's hostile work environment claim.  However, even if the Court were to conclude that these circumstances, taken together, were pervasive enough to alter the terms of Plaintiff's employment, there is insufficient evidence in the record based on which a jury could reasonably conclude that this treatment was racially-based.

For example, Plaintiff has failed to offer any evidence that Mr. Majewski's behavior toward him was based on racial animus beyond his general, undetailed, personal observation that Mr. Majewski treated African American and Caucasian employees disparately, which is insufficient to sustain his claim.  *See Joseph v. Owens & Minor Distribution, Inc.*, --F. Supp. 2d --, 2014 WL 1199578, at *8 (E.D.N.Y. Mar. 24, 2014) ("[A] plaintiff's mere subjective belief that he was discriminated against because of his race does not sustain a race discrimination claim." (internal citations and quotation marks omitted)).  Plaintiff has not identified any similarly situated Caucasian employees whom Mr. Majewski supervised who were not treated in this same manner and gives no detail as to how Mr. Majewski acts differently with Caucasian employees.  Although Plaintiff states that Mr. Majewski made disparaging remarks regarding the performance of other minority employees in different positions and departments, Plaintiff admits that Mr. Majewski never made any race-based comments with respect to those employees or with respect to Plaintiff.  As to the claims that other employees gave Plaintiff incorrect information and that Plaintiff was forced to work in a moldy office, Plaintiff provides no evidentiary context for these allegations that would support an inference that the alleged actions were undertaken on the basis of his race.  Furthermore, Plaintiff's claims regarding his job duties, twice rejected in the context of a seven-year-old grievance, are not shown to have any nexus to racial bias.

13

Plaintiff has offered testimony of his personal knowledge of the Human Resources Manager's offensive racial remark. A jury could infer racial animus on the part of Ms. Agnello based on this remark. However, Plaintiff makes no claim that Ms. Agnello ever subjected him to any discriminatory or harassing treatment. Plaintiff has no knowledge of the context for Ms. Agnello's racist remark: it was not directed towards Plaintiff, it was not made in his presence, and was not made with reference to decision-making involving him. Without establishing a more sinister context for this remark, no reasonable juror could infer from it that actions by a different employee were motivated by racial bias. Because Plaintiff has failed to put forth sufficient evidence based on which a jury could conclude that the harassment complained of was either sufficiently serious or was perpetrated on the basis of his race, Defendant's motion for summary judgment is granted.

## III.    Conclusion

For the foregoing reasons, Defendant's Motion [Doc. # 29] for Summary Judgment is GRANTED. The Clerk is directed to enter judgment for Defendant and to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 19th day of May, 2014.